Ruffin, C. J.
 

 There could hardly be a more useless litigation than the present, since, by the deed, as the bill would set it up, and by the will, the plaintiffs get nearly the same thing: the only difference being, that the profits for a period are devoted to the education of the two younger of them, and then the negroes and their increase to be equally divided between those then living. There is no intimation, that there ■is a deficiency of other assets of the grand-father to answer his debts. It seems, therefore, essentially, to be the bill of the father, and to be brought for the mere purpose of getting .the property from the management of the grand-lather’s
 
 ex
 
 
 *223
 
 ecutor into his own hands. This is mentioned rather with a view to the costs, than to the merits. For the merits depend on different considerations; and upon them our opinion is against the bill.
 

 There is no evidence, that the father obtained the deed by-force, fraud, or undue influence. Nor, indeed, do the plaintiffs give any evidence, that the deed ever existed, except the admissions of the answers, and the deposition of the defendant, William S. Delamar, who was examined under an order for that purpose. His deposition is to the same purport with the answers, and fully sustains them. According to that statement, the allegations of the bill as to the preparation of the deed, under instructions given to the writer by the donor himself, that the limitation was to the daughter’s children by her husband Harris only, and that knowing this, Mr. Delamar freely executed the deed, are, in every essential particular, falsified. The father intended to provide for all the children of his daughter by any marriage, and gave instructions to that effect, not to the writer of the deed, but to his son-in-law, Harris, who was to have the deed prepared accordingly. That he did not do : but on the other hand had a deed drawn which restricted the provision to his own children only; brought it to the old gentleman, as one prepared according to the instructions, and, consequently, as containing a limitation to all the daughter’s children, and, in a blind confidence of his son-in-law’s integrity, the father was induced by those representations to execute it. If it be said, it was the party's own fault, that he did not read the instrument, as he was able to do, and, therefore, that he must be presumed to have known the contents :' the answer is, that the presumption only stands until proof of the fact is produced, and that, here, the actual imposition is established by proof of the instructions,, the variance of the instrument from them, when it was represented to accord with them, and that the father did not, in fact, read the deed, but, believing the false representations made to him, executed it as containing one provision, when it contained another, mate
 
 *224
 
 rially different. Thus put, it was a case of plain imposition 011 donor, and he would have been entitled, by the help of this court, to have the deed called in and cancelled. Clear-
 
 ^
 
 wouj,j pe g0 entitled, as against the author of the fraud himself, as to any interest derived by him from the deed. So, too, interests gained by one person by the fraud of another, cannot be held by them; else fraud would always place itself beyond the reach of the court.
 
 Bridgeman v Green,
 
 2 Ves. 627.
 
 Huguenin
 
 v
 
 Bosely,
 
 14 Ves. 273. The father had a right, therefore, peaceably to redress himself by obtaining the instrument from the person who had improperly procured it, and who Would have been compelled by a Court of Equity to surrender it to be canelled. Nor can the present plaintiffs, although not consenting to the surrender, nor capable of consenting, insist upon the deed now being set up, if it sufficiently appear against them, that upon the bill of the supposed donor there should have been a decree to deliver up the deed. Such, we have shewn, would have been the case upon the evidence of the plaintiff’s uncle, the subscribing witness to the deed. And that evidence is strongly fortified both by what otherwise appears in the cause, and by what does not appear. In the first place, every thing that was done by Mr. Dolamar, after he got back the deed, is consistent with the account his son gives. He did not take back the instrument with the intent to deprive his daughter’s family of the use or ultimate properly of the neg2’oes. On the contrary, as long as he lived, he let them remain with Harris, and by his will he gave them to his children. It is true, that, as events turned out, the remainder goes to the same persons who would have had it under the deed ; for Mrs. Harris had but one set of children, having died before her first husband. But the provision by the will is in accordance with the avowed reason for destroying the deed, and proves that it was destroyed with an honest purpose, because it was not the instrument the party thought it was. Again, if this representation by the subscribing witness, who heard the instructions given to Harris, the father of the
 
 *225
 
 plaintiffs, who was present when he brought the deed, and heard him state, that it was written according to the instructions, and knows that his father signed it without reading it, and was astonished and indignant when he was afterwards informed of its contents: if, we say, this could be disputed, it must be upon the knowledge and by the testimony of Lovick Harris himself, who was a party to the transaction throughout. Then, his putting himself forward as the
 
 proehein ami
 
 of the plaintiffs, and thereby keeping himself back as a witness, is strong to induce the belief that this evidence as to his conduct could not be contradicted by him, but that he would be obliged to confirm it. Nor is there any evidence as to the mode in which Mr. Delamar got the deed again, except what he said to his son, when he returned with it, which was, that Harris had given it up. That too, is confirmed by the fact, that no complaint was made, or any thing said to the contraiy by Harris, as long as Delamar lived, which was six years afterwards.
 

 Our opinion therefore is, that the deed was obtained from the defendant’s testator by mistake on his part and surprise, and by the imposition of the plaintiff’s father, Lovick Harris, and that it ought to have been given up to be cancelled, as it was, and ought not to be set up; and, therefore, that the plaintiff’s bill stand dismissed, and, under the circumstances, with costs, to be paid, by Lovick Harris, who has so improperly and unnecessarily instituted the suit in the name of his children.
 

 Per Curiam. Decree accordingly.